Good morning, and may it please the Court, Amy Saharia of Williams & Connolly for Petitioner Starbucks Corporation. I will attempt to reserve three minutes for rebuttal. The Board has identified no case at finding a conversation like this one to violate the NLRA. If the Board's decision is enforced, employers will have no choice but to curtail protected speech to avoid potentially onerous Board sanctions and permanent branding by the Board as anti-union. The Court should set aside the decision below, and there are three independent paths for the Court to do so. First, the Court should hold that even considering only the objective evidence in the case, the Board committed error, including by relying on events occurring three years earlier across the country and Philadelphia to find animus in this case. Second, the Court should hold that subjective evidence of employees' reactions and employers' intentions is at least relevant to whether an employer has threatened reprisal, and the Board committed error here by refusing to consider that subjective evidence. And then third, the Court should hold, applying the Supreme Court's recent decision in Countryman, that an employer must have subjective awareness that its speech is threatening to impose liability. Now importantly, no matter which path the Court chooses, a ruling for Starbucks on either ground in this case, either the threat ground or the interrogation ground, would require setting aside the entire decision, and that's because the two grounds are inherently intertwined here. The ALJ found that there was a course of threat in part by bootstrapping to her conclusion that there was a coercive interrogation, and then the Board did the opposite, finding there was a coercive interrogation in part based on the Board's finding that there was a coercive threat. So those two grounds really do rise and fall together in this case. Now if I may, let me start with the first path that I offer the Court, which is to apply the Board's preferred test, which looks only to the objective evidence. And looking only at the objective evidence, there is just no case that the Board has cited like this one, where a single conversation, a calm conversation between a store manager and a shift supervisor with a friendly relationship was found to be a coercive threat or interrogation. There was no direct threat in this case, no actual interrogation of the employee. In fact, the employee was the only one who did the asking in the conversation. She showed no hesitation to ask the manager about the effects of unionization, and in response, the store manager repeatedly offered her own personal uncertainty as to what might happen if a union were to come. This Court has a lot of cases. Let me ask you about one, North American Manufacturing Company of 77. Is it the closest case, or are you familiar with the case? I don't remember the precise facts of that case, Your Honor, but I don't think that the Board has cited a case like this one. Okay, well, tell me what you think. We have a lot of cases. There are a lot of cases, Your Honor. There are a lot of cases in the Eighth Circuit. Tell me which one of these cases you think is the closest for you. I think the closest case on the interrogation ground is the Baptist Medical System case. In that case, there was a supervisor who met one-on-one with an employee, just like occurred here. She asked the employee why she was anti-union, because she wanted to improve her own management style, and this Court held that in all of the circumstances of that case, that was not a coercive interrogation. What about the legitimate reason to inform the nurse of what other nurses were complaining about? That was another reason why the supervisor in that case wanted to meet with that employee. But another reason was that she wanted to know what she could do better, which was the same reason that the supervisor offered here. On the threat ground, I think perhaps the best case is the Douglas Division Scott and Fetzer case. There, there was a formal communication that went out from the plant management to all of the employees. There was language in that communication, very much unlike what we have here, where the management told the employees, think very carefully before you decide to join the union. Even that language this Court held was protected speech. It was protected employer speech regarding the effects of unionization. Employers have a First Amendment right to attempt to dissuade their employees to join a union. Now, this looks nothing like most of the cases where this Court has granted enforcement. There was no surveillance, no discharges, no other forms of coercion that accompanied this lone conversation between one manager and one employee, no threats to take away benefits or to retaliate. And after all, all that is prohibited under Section 8A1 and Section 8C is actual retaliation, a threat to return, evil for evil, to do something because the employee has chosen to unionize. Now I think it's no surprise, given this record, that the Board really stretched to find a threat of coercion on these facts. Let me just give the Court a couple of examples. I think the most obvious example is the Board's reliance on events occurring three years before these events, literally across the country from Los Angeles and Philadelphia, in two Philadelphia stores, without finding any evidence that this store manager or this employee knew anything about those events. How could those events occurring three years earlier inform whether this conversation was a coercive threat or a coercive interrogation if the participants in the conversation knew  But it is the first factor in our list of factors to consider from all these cases. That is, and that is the first factor. History of employer hostility and discrimination. But I think if you look at the cases where this Court has focused on that factor, they involve situations where the history occurred in the same location, right? There's a plant where you have a history of anti-union activity such that the employees would know of that history. I haven't seen any case like this one where the history is two events occurring three years earlier across the country in a company that has nearly or more than 10,000 different locations. This is a nationwide employer with many, many employees and 10,000 stores. Now, I think another example of the way the Board stretched to find a coercive threat or interrogation on these facts is its mischaracterization of exactly what the manager said. And just to give one example, at Addendum 1, the Board said that Nolda, the manager, had threatened loss. That's a quote, loss of a pay raise. But no testimony supports that finding. At Addendum 2, she said that we were up for a raise, and she didn't know if we were going to get it at the same time as other stores. That's Addendum 15. No threat that the pay raise would be lost. All she said was, I just don't know. And it might be delayed. It could be delayed. But again, she said, I don't know. And when the employee pressed her on what she meant, the answer was, I just don't know. Now, let me briefly turn to the second path that I offered the Court, which is to hold, as this Court has looked to in other cases, that subjective evidence is at least relevant to whether a coercive threat or interrogation has occurred, this being the employee's reactions, the fact that in this case there's no evidence that the employee felt coerced, no evidence that any other employee felt coerced. After all, the store voted 21-2 to unionize, and to look at what the intentions of the employer were in conducting the conversation. In this case, the ALJ expressly refused to consider that evidence at Addendum 5 and Addendum 24. And I would commend to the Court Judge Hardiman's opinion for the Third Circuit and the Federalist Media case on this point. We cited it in our briefs here, but we also cited it importantly to the ALJ and to the Board below. In that case, there was a conservative media group, and the CEO of that company tweeted, if my employees unionize, I'll send them to the salt mines. And the Board found that to be a coercive threat, even though the company offered evidence that the employees did not feel threatened, and they understood that to be a sarcastic joke. And what the Third Circuit held and denying enforcement of the Board's decision was that the Board went too far when it opined that employees' subjective interpretations are irrelevant. And as the Third Circuit said, subjective impressions can sometimes be helpful to determine how a reasonable employee would objectively view her employer's conduct. What was the evidence of the subjective, of the recipient's reactions? In that case, the employer submitted declarations from... In this case. Oh, in this case. Well, in this case, there is the fact that the store unionized by a vote of 21 to 2, and there is no evidence that the employee felt threatened. There is a lack of evidence, which the Board bore the burden to put forward, of any feeling of coercion on the part of the employee. She characterized... There's no statement that I didn't feel threatened or I didn't... There's no direct statement from the employee, but there is a lack of evidence that the employee in any way felt threatened by this conversation. In addition to that Third Circuit decision, this Court has looked to subjective evidence, both of the employer's intent and the employee's  What case are you citing? Sure. The Baptist Medical Center case is one where the Court looked to the employee's, excuse me, the employer's intentions in conducting the conversation. And then on the employee's side, I think the two best cases are the heart beverage case and the, I think it's Midland Transportation case. In both of those cases, the Court expressly noted that there was no evidence that any employees actually felt coerced in denying enforcement of a Board decision on an 81 violation. What about, talking about subjective evidence of subjective perception, wasn't there testimony by the employee that she did not feel free to leave this secluded meeting place? I think there was testimony to that effect, that she understood this to be a required meeting. It occurred in the normal location in the back room of the office, a place that was free for employees to come and go. But that fact in and of itself might be one relevant factor, but given the content of the conversation and the fact, again, that there were no threats in the conversation, no actual interrogation in the conversation, that one fact by itself couldn't possibly be enough, and that was not the only fact that there were. But my point is, there was at least that subjective evidence in the record. There was. I would note one other piece of subjective evidence before I step down, which is the employee also testified that as to the employer's discussion of an example in Canada, she didn't think that was relevant at all to her considerations as to whether to unionize. So that was, again, another subjective reaction of the employee. So with that, I'll reserve my time for rebuttal. Good morning. Heather Beard for the Labor Board. So I'd like to begin with the three different paths that my colleague on the other side talked about by emphasizing, first of all, that the second two paths she identified, this Court is jurisdictionally barred from reviewing because the arguments that Starbucks is now making before this Court are jurisdictionally barred because they were not raised to the Board. Checking the motion that we filed to lodge the exceptions brief that was filed by Starbucks in this case, the statement, and we have this in our brief, that Starbucks made in its brief was what the standard was to evaluate employer speech in the context of a unionization campaign as to whether or not it is threatening. And that standard they cited was the Board's objective standard that the Board has had for over 60 years since the Supreme Court's decision in Gissel. The linchpin that this Court and others look to as to whether or not something has legitimately been raised and is not barred under Section 10e is whether the Board is on notice that there is a challenge being made. And if you review the exceptions and exceptions brief filed by Starbucks in this case, although they may have cited to the Federalist case, they certainly did not cite to the Federalist case in the Third Circuit to say that the standard for objective, that the objective standard that they agreed with was one that should be overturned by either the Board or this Court. So the second path- Wait, wait, wait, wait, wait. I thought they did argue that the ALJ failed to take, quote, due consideration of the audience, close quote, and then cited the Federalist case at length. Sure. I would say, Your Honor, to that, that taking due consideration of the audience is not necessarily a subjective test that needs to be applied. When the Board set forth all of the factors that it looks for- How can it not be? The audience is the recipient of the, you know, of the threat or coercion. Sure. Well, if you look to Gissel, I think it's answered by the Supreme Court. The Supreme Court, in an employer-employee context, so in your question, the audience is the employee listening to the employer. And in Gissel, that was considered to be a scenario that is an objective. Objectively, the employer is vested in that power dynamic with having more information about the working conditions and controlling the wages of the employee. So the audience, in an employer-employee context, is something that Gissel always, the Gissel is not subjective. So when we're looking to the Board being on notice to overturn its standard that this Court, all the other circuit courts, and the Supreme Court held in Gissel, we're looking to whether the Board was on notice by their exceptions to the Board or briefing. And we submit that path number two is not properly before the Court. I'm happy to discuss it, however, in the alternative if we didn't, our brief. But before I go to the objective test, and if you want to talk more about the second path she laid out, we'll go to the third path she laid out, which is another path about the Counterman case, which is clearly also barred from this Court from looking at, especially given here this Court's decision in Chipotle, where it took a look at a case that came out after the decision from the Board in that case came out, and that the company did not in that case, nor did Starbucks file what this Court held in Chipotle as necessary, which is a letter informing the Board of that, so that the Board in the first instance could take a look at that case. So I just wanted to make clear at the outset the second two paths this Court, in order to reach, would have to overcome the jurisdictional bar. So now I would like to go to the first path, the objective test that this Court and the others have applied, and to answer Judge Benton's questions about the cases. There are a lot of cases in the Eighth Circuit, okay? I agree. And the ones I would point you to, in particular for the – let's take the interrogation first. I believe you mentioned the North American manufacturing case, which I think is one of the better cases here for the Board. Now, before I explain why, I do want to say – and I think my friend on the other side would agree – the, you know, standard for this Court to look at is not, is there an identical case that we have like this? It's to look at all of the factors, which we laid out, that that's what the Court looks at, and starting with what was the nature of the statement. But if you look at the North American, my recollection of that case is that someone was asked, and was asked about attending a union meeting by the supervisor, and that this Court held that that, particularly when someone is asked, like Ms. Alarcon was here, she was asked about other people and what their position – not even what their position was on unionization, but did they start the unionization. She was asked that at the beginning, she was asked that at the end of the conversation. So I think when taking a look at the nature of the questions that she was asked, that was asked, the context of it, and the fact that there was also – and we can talk about the threat, the loss of benefits in a moment – there also was that. That's part of the context. I'd also say the linchpin of this Board's decision was not the Philadelphia case. It was one of the factors that the Board considered, that Starbucks, with its corporate franchises all around, does have other cases. And in that case, there were threats that were affirmed by, I believe it was the Third Circuit. But that was not the linchpin. The linchpin was the context and the totality of circumstances. So for purposes of coercion, I'd point you to North American manufacturing. And the point that we made in our brief, which is the cases that maybe go the other way in this Court, had different factors. So for example, in the Baptist case that you were talking about, I believe there was no questioning about any other employees and what their positions were. And in fact, there was a legitimate reason, other than just who started the union, for that conversation, which was that there had been allegations that the employee engaged in misconduct. So I think that it's clear that when this Court takes a look, as the Board did, the long-held standard for objectivity, this one-on-one conversation in the back room, which Ms. Alarcon, one of the factors again considered here, was the employee, did the employee feel free to leave? And I acknowledge, sometimes reading these cases, as Judge Shepard was saying, I believe, or you at least made me think of this, sometimes reading about a factor, it's hard to tell, is that objective? Or as I had in my dialogue with Judge Grunder, maybe that's not really subjective, it's objective. It's sometimes difficult to tell. But the key is that when the Board is looking at the evidence here, the Board, in the first instance, is given the benefit of the doubt. The Board, as the Supreme Court has held, the Board is given, if it's a reasonable construction, if substantial evidence supports the Board's findings. And that is the standard. Now that also leads me to sort of preempt one of the things you didn't talk with my board, which is the fact, the Bose case, which would say, according to them, that now, although substantial evidence has been the standard that courts have looked to under Section 8A1 with these types of statements, again, since Gissel, now, because in an older case called Bose from the Supreme Court from 1984, this is now all of a sudden a non-substantial evidence case. So, I suppose I misspoke. It's not jurisdictionally barred, but they actually, with regard to Bose, what they're ignoring is the fact that the Supreme Court in the employer-employee context, like this case, has never applied it. Bose has never been applied. In fact, it's not been applied in the commercial speech context either. So when we look to the proper standard that this case is looked at, is if the Board has substantial evidence on this record, then the Board may find that the conversation here was both an unlawful interrogation of Ms. Alarcon, as well as included statements that were coercive and threats of reprisal. So I see I do have more time. I'm happy to address any other questions that the Court may have, or if there's something you feel I didn't address, I'm happy to do that. But I would urge, on the first path set forth by my colleague on the other side, that objectively looking at the tests that have been upheld by this Court, the Eighth Circuit, and all the cases we cited in our brief, that you affirm the Board's decision. Thank you. So, just very briefly, I think counsel is misunderstanding the second path that I offered the Court, which is not for the Court to hold that the standard itself is a subjective standard, but to hold that a subjective evidence is relevant to what the Board characterized as a longstanding objective test as to whether a reasonable employee would feel threatened or coerced. That is exactly what the Third Circuit did in the Federalist Media case. It cited the objective standard and then held that subjective evidence of employee reaction is relevant. And on that point, yes, Judge Gwender, we did expressly state in our exceptions that we offered to the Board, citing Federalist Media, that the reaction of the audience is relevant to the objective standard, and that is what we're asking the Court to hold on the second path. Now, on your other path, though, the intent of the speaker, I think you actually argued that that was irrelevant to an 8A1 analysis. So I think she may have a good point on that. I don't know that we actually argued that the intent of the speaker was irrelevant, as opposed to stating that it was irrelevant. I think we cited the objective standard, which asks whether a reasonable employee would understand the statement to be threatening, but I don't know that that means the intent of the speaker would not be relevant to that consideration. Well, I don't know. The quote I have is that 8A1 violations, quote, do not turn on the speaker's motive, close quote. Correct. They don't turn on the speaker's motive. It's not dispositive, but that doesn't mean it's not relevant, Your Honor. Okay. Now, just briefly to respond to the objective analysis, I do want to address Judge Benton's question about North American manufacturing. That is a perfect example of a case where there was anti-union animus infusing the very location at which the interrogation occurred. Just to read from the court's opinion, the later interrogation took place after the company had inter alia, denigrated the union, refused to bargain with the union, and promised unilateral benefits to its employees. Nothing of the sort occurred here. This was an innocuous conversation in one store between one manager and one supervisor, and we urge the court to deny enforcement. Thank you. Thank you.